**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | |
|---|---|
| **PROJECT ON GOVERNMENT** ) | |
| **OVERSIGHT, INC.** ) | |
| **1100 G St., NW** ) | |
| **Suite 500** ) | |
| **Washington, D.C. 20005,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **v.** ) | **Case No: 20-01912** |
| ) | |
| **U.S. SMALL BUSINESS** ) | |
| **ADMINISTRATION** ) | |
| **409 3rd Street, SW** ) | |
| **Washington, DC 20416,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**COMPLAINT**

This complaint for injunctive and other appropriate relief seeks the immediate release of

records requested by the plaintiff Project On Government Oversight ("POGO") and from

defendant, U.S. Small Business Administration ("SBA"), pursuant to the Freedom of

Information Act ("FOIA"), 5 U.S.C. § 552.

### I.      INTRODUCTION

1. POGO asserts violations of FOIA by SBA for failing to respond to POGO's request.

2. POGO filed a request with SBA regarding this subject on June 11, 2020.

3. SBA acknowledged receipt of POGO's requests on June 11, 2020.

4. FOIA guidelines required SBA to respond within 20 business days, excluding

Saturdays, Sundays, and legal holidays. To date, SBA has not produced any responsive

documents.

5. POGO seeks a declaration that SBA violated FOIA by failing to disclose responsive records by the statutory deadline and an injunction ordering SBA to produce all non-exempt, responsive records by a date certain, without further delay.

## II.  JURISDICTION AND VENUE

6. This Court has both subject matter jurisdiction over the parties pursuant to 5 U.S.C. § 552(a)(4)(B). This Court also has jurisdiction over this action pursuant to 28 U.S.C. § 1331.

7. Venue lies in this district under 5 U.S.C. § 552(a)(4)(B).

## III.  PARTIES

8. Plaintiff POGO is a nonpartisan independent organization based in Washington, DC organized under section 501(c)(3) of the Internal Revenue Code. Founded in 1981, POGO champions reforms to achieve a more effective, ethical, and accountable federal government that safeguards constitutional principles. POGO's investigators and journalists take leads and information from insiders and verify the information through investigations using FOIA, interviews, and other fact-finding strategies. POGO's investigative work has been recognized by Members of Congress, executive branch officials, and professional journalism organizations. For instance, in 2015, POGO won the Robert D.G. Lewis Watchdog Award, the Society of Professional Journalists Washington, D.C. Professional Chapter's highest journalistic award, for reporting on the Department of Justice's opaque system for handling allegations of attorney misconduct within its ranks. In 2018, POGO won an award from the Society for Advancing Business Editing & Writing for its investigative series scrutinizing the government's oversight of offshore drilling. POGO extensively used records obtained under FOIA for this investigation.

9. SBA is a federal agency within the meaning of FOIA, 5 U.S.C. § 552(f). SBA has possession or control of the records POGO seeks in this action.

Complaint
Page 2

### IV.     FREEDOM OF INFORMATION ACT

10. FOIA requires federal agencies, upon request, to make records "promptly available" to the public. Id. § 552(a)(3)(A).

11. The agency must provide the public records when they are requested by the public, in order "to ensure an informed citizenry, vital to the functioning democratic society." *See LRB v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 242 (1978).

12. An agency must determine whether to comply with a FOIA request within twenty business days and "shall immediately notify the person making such request of such determination and the reasons therefor." *Id*. § 552(a)(6)(A)(i); see also 15 C.F.R. § 4.6(b).

13. The twenty-day deadline for an agency to determine whether to comply with a request begins on the date "the request is first received by the appropriate component of the agency" but no later than "ten days after the request is "first received by any component of the agency that is designated in the agency's regulations . . . to receive [FOIA] requests." 5 U.S.C. § 552(a)(6)(A)(i)-(a)(6)(A)(ii).

14.  In unusual circumstances, the time limits prescribed may be extended by written notice to the person making such request setting forth the reasons for such extension and the date on which a determination is expected to be dispatched. No such notice shall specify a date that would result in an extension for more than ten working days. 5 U.S.C. § 552(a)(6)(B).

15. If an agency does not respond to a FOIA request by the statutory deadline, the requester is deemed to have exhausted administrative remedies and may immediately pursue judicial review. Id. §§ 552(a)(6)(C)(i), 552(a)(4)(B).

Complaint
Page 3

## V.    BACKGROUND AND PUBLIC INTEREST IN THE RECORDS SOUGHT

### i.    U.S. Small Business Administration

16. SBA was created by Congress in 1953 to help small business owners and entrepreneurs. *See* www.sva.gov/about-sba excerpt, attached hereto as Exhibit A.

17. The SBA is the only cabinet-level federal agency fully dedicated to small business and provides counseling, capital, and contracting expertise as the nation's only go-to resource and voice for small businesses. *Id.*

18. The U.S. Small Business Administration (SBA) aids, counsels, assists, and protects the interests of small business concerns, and advocates on their behalf within the Government. It also helps victims of disasters. It provides financial assistance, contractual assistance, and business development assistance. 13 C.F.R. § 101.100.

### ii.    The CARES Act

19. The Coronavirus, Relief, and Economic Security Act ("CARES Act"), which became Public Law No. 116-136 on March 27, 2020, was enacted to respond to the COVID-19 outbreak and its impact on the economy, public health, state and local governments, individuals and businesses. *See* excerpt of CARES Act, H.R. 748, 116th Cong. (2020), attached hereto as Exhibit B.

20. The CARES Act includes resources for small businesses to help them retain their employees in the wake of the negative impact of COVID-19 on the economy.

21. Several key provisions of the Act include:

- Direct payments of up to $1,200 for individuals, and $2,400 for married couples, plus an additional $500 per child. The payments will be available for incomes up to $75,000 for individuals and $150,000 for married couples;

Complaint
Page 4

- $250 billion for an extended unemployment insurance program and expands eligibility and offers workers an additional $600 per week for four months, on top of what state programs pay;
- The measure allows employers to delay the payment of their portion of 2020 payroll taxes until 2021 and 2022;
- A waiver of the 10% early withdrawal penalty for retirement fund distributions up to $100,000 for coronavirus-related purposes, retroactive to Jan. 1;
- An increase of the 401(k) loan limit from $50,000 to $100,000;
- Required Minimum Distributions from IRAs and 401(k) plans (at age 72) are suspended; and
- Small business relief: $350 billion is being dedicated to preventing layoffs and business closures while workers have to stay home during the outbreak. Companies with 500 employees or fewer that maintain their payroll during coronavirus can receive up to 8 weeks of cash-flow assistance. If employers maintain payroll, the portion of the loans used for covered payroll costs, interest on mortgage obligations, rent, and utilities would be forgiven.

*See* March 29, 2020 Forbes article, at pp. 2-3, attached hereto as exhibit C.

22. In addition, division A of the CARES Act "establishes the Paycheck Protection Program ["PPP"] to provide eight weeks of cash flow assistance to small businesses through federally guaranteed loans to employers who maintain their payroll. Such assistance shall be to cover costs such as payroll, paid sick leave, supply chain disruptions, and employee salaries. The division further provides that certain amounts owed on such loans are eligible to be forgiven." Exhibit B.

23. The SBA is responsible for providing advances on SBA emergency disaster loans for small businesses that have applied for such loans due to the COVID-19 pandemic. *Id.*

Complaint
Page 5

### iii.     PPP

24. The CARES Act established a new $349 billion Paycheck Protection Program.[1] *See*

U.S. Department of Treasury Mach 31, 2020 press release, attached hereto as Exhibit D, at p. 1.

25. The Paycheck Protection Program is a loan designed to provide a direct incentive for

small businesses to keep their workers on the payroll. *See* Paycheck Protection Program Loan

Information from SBA.gov, attached hereto as Exhibit E, at p. 1.

26. The maximum loan amount is $10 million. Exhibit D, p. 2.

27. SBA will forgive loans if all employee retention criteria are met, and the funds are

used for eligible expenses. Exhibit D, p. 1.

28. "The loan will be fully forgiven if the funds are used for payroll costs, interest on

mortgages, rent, and utilities" and "forgiveness is based on the employer maintaining or quickly

rehiring employees and maintaining salary levels. Forgiveness will be reduced if full-time

headcount declines, or if salaries and wages decrease." Exhibit D, p. 2.

29. Those who can apply for a PPP loan are:

- Any small business concern that meets SBA's size standards (either the industry based sized standard or the alternative size standard)
- Sole proprietors, independent contractors, and self-employed persons
- Any business with a NAICS Code that begins with 72 (Accommodations and Food Services) that has more than one physical location and employs less than 500 per location
- Any business, 501(c)(3) non-profit organization, 501(c)(19) veterans organization, or Tribal business concern (sec. 31(b)(2)(C) of the Small Business Act) with the greater of:
  - 500 employees, or
  - That meets the SBA industry size standard if more than 500

---

[1]      On April 24, the Paycheck Protection Program and Healthcare Enhancement Act was enacted, increasing the PPP's funding to $659 billion. *See* Public Law 116-139, attached hereto as Exhibit M, at p. 2.

*Id.*[2]

### iv.      Federal Funding Accountability and Transparency Act

30. The Federal Funding Accountability and Transparency Act ("FFATA") was signed

on September 26, 2006 with the intent to empower every American with the ability to hold the

government accountable for each spending decision. *See* www.frs.gov, attached hereto as Exhibit

F at p. 6.

31. The FFATA legislation requires "full disclosure of all entities and organizations

receiving Federal funds." *See* Public Law 109-282, attached hereto as Exhibit G, at p. 2.

32. An entity, which includes both for profits and nonprofits is defined as:

> (i)  a corporation;
> (ii) an association;
> (iii)a partnership;
> (iv)a limited liability company;
> (v) a limited liability partnership;
> (vi)a sole proprietorship;
> (vii)     any other legal business entity;
> (viii)    any other grantee or contractor that [on and after January 1,
>           2009 was a subcontractor or subgrantee;] and
> (ix) any State or locality[.]

It does not include an individual recipient of Federal assistance or a Federal employee. Exhibit

G, p. 2.

33. A Federal award means Federal financial assistance and expenditures that include

grants, subgrants, loans, awards, cooperative agreements, and other forms of financial assistance

which does not include individual transactions below $25,000. *Id.*

---

[2]     A table of small business size standards matched to the North American Industry
Classification System is available at, https://www.sba.gov/sites/default/files/2019-
08/SBA%20Table%20of%20Size%20Standards_Effective%20Aug%2019%2C%202019_Rev.p
df.

Complaint
Page 7

34. The federal awards must be made available to the public via a searchable website.

Exhibit F, p 1.

35. FFATA requires that "through a single search" the following be provided for each entity receiving a Federal award:

36. The website must also provide for each Federal award:

> (A) the name of the entity receiving the award;
> (B) the amount of the award;
> (C) information on the award including transaction type, funding agency, the North American Industry Classification System code or Catalog of Federal Domestic Assistance number (where applicable), program source, and an award title descriptive of the purpose of each funding action;
> (D) the location of the entity receiving the award and the primary location of performance under the award, including the city, State, congressional district, and country;
> (E) a unique identifier of the entity receiving the award and of the parent entity of the recipient, should the entity be owned by another entity; and
> (F) any other relevant information specified by the Office of Management and Budget.

Exhibit G, p. 3.

37. In May 2014, the Digital Accountability and Transparency Act ("DATA") expanded the FFATA in order to "increase accountability and transparency om Federal spending[.]" *See* Public Law 113-101, attached hereto as Exhibit H, at p. 2.

38. The purpose of DATA is to tax payers and law makers have the most consistent, reliable and searchable data by disclosing direct Federal agency expenditures and linking Federal contract, loan, and grant spending information to programs of Federal agencies. Exhibit H, p. 2.

39. The Federal awards made to sole proprietorships and small businesses through PPP loans should be made public based on FFATA and DATA regulations.

Complaint
Page 8

#### v.       Insufficiency of Publicly Disclosed Data

40. The SBA provides a PPP loan data on its website. *See* https://www.sba.gov/funding-programs/loans/coronavirus-relief-options/paycheck-protection-program#section-header-5; *see also* Exhibit E.

41. As of July 10, 2020, nearly 5 million loans totaling more than half a trillions dollars have been issued, with an average loan amount of $105,500. Exhibit E, p. 4.

42. Data on the loans is separated into two main categories, loans of $150,000 and above and loans under $150,000.  Exhibit E, p. 4.

43. The disclosed PPP data is insufficient.

44. The data produced for loans over $150K is far more limited than data consistently posted for all other loans or grants.

45. Firstly, each award should have a specific amount rather than just an acknowledged range within which the loan amount falls. *See* PPP $150,000 and up loan data sample, attached hereto as Exhibit I.

46. Specific amounts allow for closer review and analysis of the awards that can be critical to effective oversight.

47. Secondly, the released data is missing dozens of fields that are reported for all other assistance awards including total loan subsidy cost, recipient DUNS number, parent company name, parent company DUNS number, period of performance dates, place of performance information, award description, and top five highly compensated company officers. *See* list of data fields from www.USApending.gov, attached hereto as Exhibit J.

48. The absence of these fields, and the many others released under FFATA and DATA Act, greatly restricts the analysis that researchers and investigators can conduct.

Complaint
Page 9

49. The disclosure also fails to identify or provide award details on approximately 4 million loans that fall under the $150K threshold. *See* PPP less than $150,000 loan data sample, attached hereto as Exhibit K.

50. While the specific amount of these loans is properly disclosed, there still remains an enormous amount of unreported data which is legally required to be disclosed and has been disclosed for all other federal loans to businesses.

51. These loans, that could be forgiven and essentially become grants, represent more than $100 billion of taxpayers' money. *See* June 30, 2020 PPP Report, attached hereto as Exhibit L, at p. 3.

52. There is nothing in the CARES Act that permits the administration to treat these loans differently or ignore the legal obligation under the FFATA and DATA t to make these awards fully public.

### vi.    Public Interest

53. POGO is requesting records which will inform readers about the millions of individual awards made under the Payment Protection Program.

54. The program was authorized to award more than $600 billion in loans and loan guarantees under terms that would allow the loans to be forgiven if the recipient were to meet required conditions – essentially turning the loans into grants.

55. The data will also allow the public to track which companies pay back their loans and which meet their requirements to have the loans forgiven.

56.  Public review of recipients of these PPP loans will help ensure that no waste, fraud, abuse, or conflicts of interest occurred in the awarding of these funds.

57. SBA has reported the recipients and award details for all awards made under the 7(a) Loan Program (CFDA 59.012) for years. (This information is publicly available at https://www.sba.gov/about-sba/open-government/foia#section-header-32.

58. This new loan program is an extension of the 7(a) Loan Program and the same level of disclosure should be maintained.

59. The data allows the public to fully understand who received taxpayer funds under the program, where specifically these recipients are located, and other key details about the awards as well as better understanding the agency's actions in spending these funds.

60. This data will allow the public to review the spending in detail including breakdowns of spending based on industry sector, location, loan size, and other factors which will provide important insights into the program and its effectiveness.

## VI.    PLAINTIFF'S FREEDOM OF INFORMATION ACT REQUEST

61. On June 11, 2020, POGO employee Sean Moulton submitted an online FOIA request to SBA which requested, "[t]he individual award data for all loans or other financial awards made under the Payment Protection Program (CFDA 59.073) authorized under the Coronavirus Aid, Relief, and Economic Security (CARES) Act. The data should include the name of recipient, award amount, and all other data elements typically reported to USAspending.gov for federal awards." ("Request"). *See* June 11, 2020 FOIA request, attached hereto as Exhibit N; *see also* Acknowledgment letter, attached hereto as Exhibit O.

62. POGO received an acknowledgment letter dated June 11, 2020 for the Request and it was assigned the tracking number SBA-2020-001834. Exhibit O.

Complaint
Page 11

63. On July 13, Mr. Moulton checked the status of the Request on

https://foiaonline.gov/foiaonline/action/public/home which stated that the "description of this

request is under agency review." *See* FOIAOnline screenshot, attached hereto as Exhibit P.

64. To date, POGO has received no documents responsive to the Request.[3]

65. Plaintiff POGO has a statutory right to the requested records, and there is no legal

basis for SBA's failure to disclose them.

## VII.   CAUSES OF ACTION

### COUNT 1
### Violation of the FOIA for Failure to make Promptly
### Available the Records Sought by Plaintiff's Requests

66. Paragraphs 1-64 are realleged and reincorporated herein by reference.

67. Defendant's failure to make promptly available the records sought by plaintiff's

requests violates the FOIA, 5 U.S.C. § 522(a)(3)(A).

### COUNT 2
### Violation of the FOIA for Failure to Timely Respond to Plaintiff's Requests

68. Paragraphs 1-66 are realleged and reincorporated herein by reference.

69. Defendant's failure timely to respond to plaintiffs' request violates the FOIA, 5

U.S.C. § 552(a)(6)(A)(i), and DOJ's own regulation promulgated thereunder, 28 C.F.R. §

16.6(b).

## VIII.   PRAYER FOR RELIEF

**WHEREFORE,** plaintiff , POGO, prays for the following relief:

    a.  As to Count 1:
        i.  Order defendant to immediately State which records it intends to disclose in response to plaintiff's FOIA requests;
       ii.  Order defendant to provide a schedule of production to plaintiff;

---

[3]    FOIA allows the Agency 20 business days to respond to POGO's request. SBA has not requested any additional time to respond.

       iii.   Order defendant to disclose all responsive, non-exempt records by a date certain without further delay;

       iv.   Order defendant to disclose a log identifying any document or parts thereof that it withholds and the basis for the withholding;

       v.   Award plaintiff its costs and reasonable attorney's fees incurred in this action; and

       vi.   Grant such other relief as the Court may deem just and proper.

b.   As to Count 2:

       i.   Order defendant to immediately State which records it intends to disclose in response to plaintiff's FOIA requests;

       ii.   Order defendant to provide a schedule of production to plaintiff;

       iii.   Order defendant to disclose all responsive, non-exempt records by a date certain without further delay;

       iv.   Order defendant to disclose a log identifying any document or parts thereof that it withholds and the basis for the withholding;

       v.   Award plaintiff its costs and reasonable attorney's fees incurred in this action; and

       vi.   Grant such other relief as the Court may deem just and proper.

Respectfully submitted this 15th day of July, 2020.

By:      __/s/Ross A. Nabatoff_____

Ross A. Nabatoff, DC Bar # 376665
LAW OFFICE OF ROSS A. NABATOFF
1440 G Street, N.W.
Washington, D.C.  20005
(202) 650-0037
*Attorney for Plaintiff*

Complaint
Page 13